United States District Court
Eastern District of New York

1:18-cv-01465   (    ) (    )

Russell Ransom individually and on behalf of
all others similarly situated

Plaintiff

- against -

Complaint

I Heart Foods Corp.

Defendant

The above-named plaintiff Russell Ransom ("plaintiff"), individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Quinoa is (i) a pseudocereal, (ii) grown primarily for its edible seed and (iii) considered an "ancient grain" because it has been little changed by selective breeding over recent millennia, unlike cereals and grains such as corn, rice and wheat.

2.     The popularity of quinoa has recently increased because it is (i) not made from genetically modified organisms (GMOs), (ii) nutritionally dense and can supplements/replace protein for people seeking more plant-based diets and (iii) gluten-free, appealing to those with gluten sensitivities and others avoiding wheat.

3.     Quinoa appeals to first-world consumers who derive satisfaction from knowing quinoa can thrive in non-optimal conditions with a fraction of water required by other crops, helping reducing hunger and malnutrition.

4.     Secular societal trends towards more snacking and fewer meals causes consumers to seek products which feel like an indulgence yet also provide nutrients and protein in a way traditional snacking fare would not have.

1

5.     Food companies have responded to this trend through incorporating novel ingredients to give a "fresh" take on existing snack foods.

6.     I Heart Foods Corp. ("defendant") manufactures and sells quinoa snack products under the brand "I Heart Keenwah."

7.     The relevant I Heart Keenwah products are the "Quinoa Puffs" (the "Products"), sold in (i) 1.5 and 3 oz bags, (ii) no fewer than Sweet Chili, Aged Cheddar, Herbs de Provence, Sea Salt Truffle varieties and (iii) through third-parties via brick-and-mortar stores and online.

8.     The Products common, identical representations focus exclusively on quinoa:

<u>Sea Salt Truffle</u>



Quinoa Puffs

irrestisably crunchy

120 calories 💙 5g of Protein

T-1(a)

2

9.    The back panels contain similar or identical information, consisting of the product name, nutrition facts and ingredient list, and the first paragraph of text on the right side below the phrase, "the mindful munchie," which states:

> You just opened a crunchy, munchy snack that's as good as it good for you. We start with quinoa – the little seed that's a naturally complete source of protein with all 9 essential amino acids – then we finish it up with bold and foodie-worthy flavors that you're not gonna want to share.

<u>Back Panel</u>





T-2(a)                                 T-2(b)

10.    The Products ingredient list declares the main ingredient to be "Quinoa Puff" while the nutrition facts below confirm the protein content of the Product.

(Sea Salt Truffle)



INGREDIENTS: Quinoa Puff (Quinoa Flour, Brown Rice Flour, White Rice Flour, Pea Protein Concentrate, Baking Powder), High Oleic Sunflower Oil, Seasoning: Sea Salt, Parsley, Dried Truffle, Natural Flavor.



**Nutrition Facts**

Serving Size 1oz (28g)
Servings Per Container 3

Amount Per Serving

| Calories 120 | Calories from Fat 25 |
|---|---|

| | % Daily Value* |
|---|---|
| **Total Fat** 2.5g | 4% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 190mg | 8% |
| **Total Carbohydrate** 18g | 6% |
| Dietary Fiber 1g | 4% |
| Sugars 0g | |
| **Protein** 5g | |

| Vitamin A 0% | • | Vitamin C 0% |
|---|---|---|
| Calcium 2% | • | Iron 10% |

*Percent Daily Values are based on a 2,000 calorie diet.

T-3(a)

11.     Defendant's Products are one of many puffed snacks on the market, descended from the original puffed snack, popcorn.

12.     To increase variations in shape, size, and composition, manufacturers developed methods for puffing pellets made from corn meal, mainly for breakfast cereals.

13.     For years, snack food products have been made through the expansion of such pellets, also referred to as "half-products" since they have already been cooked by the time they are ready to be used and requires additional processing before sold to the consumer.

4

14.   Half-products are made through an extrusion process by mixing the ingredients into a dough, passing the dough through a forming die to give it a pellet shape, cooking the dough pellet and dried to limit moisture retention.

15.   The pellets are distributed to companies who perform the final "puffing" by frying or baking, the latter entailing hot air puffing with steam.



16.   The flavoring is through incorporation of the seasoning ingredients prior to the formation of the pellets or after the pellets have been expanded.

17.   Pellets are valued because they are shelf-stable, can be customized by ingredients (i.e., added quinoa flour), shipped long distances and distributed to small snack food manufacturers who lack the capability to convert raw materials into a final food.

18.   It is likely that the Products are made from pellets because "quinoa puffs" is listed as an ingredient, implying defendant takes possession of the pellet and is responsible for its "puffing," rather than being responsible for blending the flour composite ingredients.

19.   Additionally, defendant, a recently established firm, may not have the scale or capacity to convert complex grains and cereal products into finished food products.

20.   It is probable that quinoa flour is not the predominant ingredient in the quinoa puff despite being listed first for several reasons.

5

21.     First, the high fat/lipid content of quinoa (relative to rice/(degerminated) corn flour) would cause its native oils to smear the surface of the extruder, impeding its functioning.

22.     Second, the Product's expansion would be limited if so much quinoa were present, due to dough slippage within the extruder and the powerful lubricant effect of the fat.

23.     Third, the presence of mostly quinoa would require higher than optimal moisture and temperature before significant puffing could occur, which would be to the detriment of the organoleptic and textural qualities of the Products.

24.     Puffed foods made through extrusion must have an appropriate balance of starch, moisture, lipids, crude fiber and protein to have and maintain their structure after expansion.

25.     In part owing to their functional properties, puffed extrusion foods consist predominantly of corn (defatted) or rice, because of the low fat and high starch content.

26.     The Products here appear to be based on rice because (i) the naturally blander rice flavor (compared to corn) is more compatible with a wider range of added flavors, such as small amount of quinoa (a nutty flavor) and (ii) rice results in a crisper product with more of a "crunch" sensation than corn, confirmed by the front label ("Irresistibly Crunchy").

27.     Fourth, an examination of the "quinoa puff" components leads to the conclusion that even though the Products may contain quinoa, rice is predominant.

28.     This is because components of the "Quinoa Puff" ingredient are listed as "Quinoa Flour, Brown Rice Flour, White Rice Flour, Pea Protein Concentrate."

29.     Since quinoa flour is listed first, the Products represent it is present in the quinoa puff ingredient in an amount greater than any of the other components. 21 C.F.R. § 101.4(b).

30.     However, the presence of a rice ingredient as the second and third listed components makes it likely that at a minimum, the amount of rice (brown and white) is almost half.

31.    The Products likely contain more rice than quinoa, at a minimum ratio of twice as much rice as quinoa, or 2:1.

32.    This is because if the quinoa puff had twice as much quinoa to rice or an equivalent amount of each, the problems identified above with respect to creating a puffable product would exist and the finished products would not be the uniformly sized spheres which they are.

| Quinoa Puff | Quinoa | Brown Rice | White Rice | Pea Protein Concentrate |
|---|---|---|---|---|
|  | 7 | 1 | 1 | 1 |
| 10 | 6 | 2 | 1 | 1 |
|  | 5 | 3 | 1 | 1 |
|  | 4 | 4 | 1 | 1 |
|  | 3 | 5 | 1 | 1 |
|  | 2 | 6 | 1 | 1 |

33.    The presence of the "pea protein concentrate" supports the notion that the amount of quinoa is the product is less than the reasonable consumer would expect since quinoa is not the main or primary source of the protein.

34.    Consider 1 gram of quinoa flour has .14 g of protein - requiring 36 grams of quinoa to contain 5 g of protein (serving size), which is impossible given a serving size is 28 grams.

35.    1 gram of pea protein concentrate has .78g of protein, more than five times as much as the equivalent amount of quinoa.

36.    This means that a small amount of pea protein concentrate could be used as part of the quinoa puff and contribute almost the entire amount of the 5 grams of protein.

37.    If the quinoa was able to be the sole or predominant protein source in the Product, it would not contain pea protein concentrate.

38.    The Products' misleading representations include the Product name in large capitals on the front and back panel, the back panel text only discussing quinoa, the emphasis on the high protein content, implied to be the result of the quinoa and "quinoa puff" being an ingredient

39.   This gives a reasonable consumer the erroneous impression that quinoa (quinoa flour) is present in an amount greater than is the case, in terms of percentage and absolute amount, because there is no mention other than the small font ingredient list that other components make up a "Quinoa Puff."

40.   This is misleading because the presence of quinoa has a material bearing on price and consumer acceptance of the product, evidenced by the Product's brand name and marketing.

41.   Finally, "quinoa puffs" or "puffed quinoa" is a distinct food expanded through a "gun puffer" and consumed directly, which does not contain added rice or pea protein concentrate.

42.   Plaintiff believed the Products were made with only quinoa in the same way consumers would observe products named "rice puffs" and reasonably expect they were composed of only rice or rice flour which was puffed.

43.   Excluding tax, the Products cost no less than $4.99, a premium price compared to other similar products.

<u>Jurisdiction and Venue</u>

44.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

45.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

46.   This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

47.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

48.   A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

49.    The classes consist of all consumers in all states and all consumers in New York State who purchased any Products bearing any actionable representations herein during the statutes of limitation periods.

50.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.

51.    The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

52.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

53.    Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

54.    Plaintiff is an adequate representative because his/her interests do not conflict with other members.

55.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

57.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

58.     Plaintiff seeks class-wide injunctive relief because the practices continue, with the injunctive class maintained as a class action because it meets the same criteria as the non-injunctive class.

Parties

59.     Plaintiff is a citizen of Kings County, New York.

60.     Defendant is a Delaware corporation with a principal place of business in Chicago, Illinois.

61.     In 2017, plaintiff purchased the Product(s) for no less than $4.99, excluding tax, at a store within this District.

62.     Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the front label identification and description, "Quinoa Puffs" and the front label claims of a high protein content for a snack food.

63.     These representations gave plaintiff the reasonable impression that the Product consisted exclusively of quinoa and that the high protein content was obtained from quinoa.

Violations of New York General Business Law §§ 349 & 350

64.     Plaintiff repeats and realleges all allegations in foregoing paragraphs.

65.     Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

66.     The representation, description and identification of the Products as "Quinoa Puffs" and the protein claims are false and misleading for the reasons described herein.

67.     No reasonable consumer would expect a product represented as such to be a plain, puffed rice ball, with its relatively high protein content derived from "pea protein concentrate" and containing a relatively low amount of actual quinoa-based ingredients.

68.     The representations and omissions were relied on by plaintiff and class members, who paid more than they would have without getting all they bargained for.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

69.     Plaintiff repeats and realleges all allegations in foregoing paragraphs.

70.     Defendant manufactures and sells snack products purporting to consist exclusively of quinoa and have a high protein content derived from quinoa and warranted same to plaintiff and class members.

71.     The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

72.     Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

<u>Fraud</u>

73.     Plaintiff repeats and realleges all allegations in foregoing paragraphs.

74.     Defendant described and identified the Products as Quinoa Puffs and touted quinoa exclusively, when it could have used non-misleading names or descriptions.

75.     Defendant's purpose was to mislead consumers who increasingly seek products which consist of predominantly non-traditional, yet healthier ingredients instead of corn, rice or potatoes for example.

76.     Defendant's intent was to distinguish its Products in the marketplace amongst the numerous other companies producing "better for you" snack products.

11

77.   Plaintiff and class members observed and relied on the representations, which they understood to mean that quinoa was the sole substantive (i.e., non-flavoring) ingredient therein.

78.   Plaintiff and class members paid more than they would have due to the false representations, entitling them to damages.

Unjust Enrichment

79.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.   Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiff, individually and on behalf of all others similarly situated, prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct its practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:  March 8, 2018

Respectfully submitted,

Levin-Epstein & Associates, P.C.
 /s/Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046
joshua@levinepstein.com

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
spencer@spencersheehan.com

1:18-cv-01465   (    ) (    )
United States District Court
Eastern District of New York

Russell Ransom individually and on behalf of all others similarly situated

Plaintiff

- against -

I Heart Foods Corp.

Defendant

# Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 8, 2018

/s/ Joshua Levin-Epstein
Joshua Levin-Epstein